James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

Phil GREINETZ, doing business as Los Wigwam Weavers, Appellee.

No. 5287.

United States Court of Appeals Tenth Circuit.

July 24, 1956.

**622**

Bessie Margolin, Asst. Solicitor, Washington, D. C. (Stuart Rothman, Sol., Sylvia S. Ellison, and Paul M. Cadra, Washington, D. C., and Harper Barnes, Regional Attorney, Kansas City, Mo., on the brief), for appellant.

Walter F. Scherer, Denver, Colo., for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This action was brought in the United States District Court for the District of Colorado against Phil Greinetz,[1] doing business as Los Wigwam Weavers, by the Secretary of Labor under Section 17 of the Fair Labor Standards Act,[2] 29 U.S.C.A. § 217, to enjoin appellee from violating the minimum wage requirement provisions of the Act, and from shipping in interstate commerce goods produced by certain workers. The alleged minimum wage violations resulted from the employer's failure to pay employees for half an hour per day when they are required to take fifteen minute rest periods during their regularly scheduled morning and afternon working hours. The trial court concluded that the two periods were not compensable and entered judgment for the employer. This appeal challenges the correctness of that ruling.

There is no dispute in the basic facts and only the permissible conclusions to be drawn therefrom are in dispute. The employer, doing business as the Los Wigwam Weavers, is engaged in the manufacture of neckties, mufflers and stoles from cloth produced on hand-operated looms in his establishment at Denver, Colorado. Most of the product is shipped in interstate commerce, and admittedly all of his employees are engaged in the production of goods for commerce within the meaning of the Act. Compensation for the employees in controversy is on a piece work basis, and if the required rest period must be calculated as compensable time the wages of a number of the employees did not equal the statutory minimum wage of seventy-five cents per hour in numerous workweeks during the two years preceding the complaint below.

It is admitted that the work of these employees is intricate and fatiguing. The cloth is produced on primitive hand-operated looms. The employee must operate treadles with her feet and manually throw shuttles containing the thread back and forth through the threads or warp parted by the foot pedal movement. A number of different shuttles may be used in weaving a single piece of cloth. By the employer's admission, this is a monotonous and tiring operation after a few hours because of the coordination required and the constant attention which the operator must give to the loom.

Prior to World War II, the weaving was done by young men, but when the war effort took nearly all young men, the employer had to look elsewhere for a supply of labor. Older men were tried but could not handle the job; finally it was found that women had the coordination and skills required. At this time the operation was on a regular eight hour day. But, according to the employer's testimony, he "noticed that at night the women would go home and they would just be so tired, their cheeks would be sunk in. And then when some of the same women would come to work

1. Herein called the employer.

2. Herein called the Act.

in the morning, they were still tired * * * it wasn't very long before they broke down. First, they'd catch cold, then something else happened, and, well, it was just bad all around, bad for them as well as being bad for us." Therefore, after a conference with the workers and at the workers' suggestion, it was decided to give the employees a rest period of fifteen minutes at mid-morning and midafternoon so they could get away from the looms and relax with a soft drink or a cup of coffee. At first the rest periods were optional, but upon observing the beneficial effects the employer made them compulsory. These thirty minutes were not considered as a part of the working day, and when a worker's piece rate compensation did not equal the seventy-five cents per hour minimum wage the employer in making up the difference would omit the rest periods in the computation. When a new employee is hired she is told of the rest periods and that she will not receive any pay for the time involved.

The employees are required to leave their work places during the rest period in order to insure that they relax; in theory they are otherwise free to do as they please during the time. In practice, however, they nearly always stay on the same premises on the same working floor, although the only facilities on that floor are the usual restrooms and a table and equipment provided by the employer to enable them to make tea or coffee. The reason they stay near their work during this period is the fact they are on the third floor of the building with no elevator and in the factory district of Denver. But undoubtedly the principal reason the employees stay on the premises is the shortness of the break time.

The employer testified in some detail regarding the beneficial effect of the rest periods upon production. He testified that the breaks and shorter hours enabled four of the women who were the poorest workers to become the best workers in the shop within two or three weeks. If the rest periods were not provided, he asserted that he would have to put on another shift to maintain production. And he testified that these women produced more in the six and one-half hour day than the young men employed before the war ever did in eight hours.

From this evidence the trial court found that the rest periods were for the mutual benefit of the employees and the employer; that the workers are told prior to their employment about the rest period and that they are not paid for it; that they must not work during the rest period and are permitted to use the time for any non-work activity they might choose; and that they have accepted the arrangement for a period of fifteen years without complaint or demand for extra compensation. The court accordingly concluded that under the special circumstances of this case the rest periods were not compensable.

■■■ Whether idle time is compensable or not is sometimes a difficult question to answer. All the cases make it clear that under certain conditions it is a part of employment time and must, therefore, be compensated. While in the main the factors which must be considered are well known, the difficulty as always comes when we undertake to apply them to a given state of facts, and because facts differ decided cases are not controlling and are helpful only as they point the way. Some of the factors to consider are whether idle time is spent predominantly for the employer's or employee's benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time. The cases also make it clear that the answers to these questions must be gleaned from all the facts and circumstances of each case.[3]

Rest periods of somewhat longer periods of time have been considered in a

3. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118.

number of cases. Darr v. Mutual Life Insurance Company, 2 Cir., 169 F.2d 262, held that rest periods of twenty-five to forty-five minutes duration required of elevator operators were not compensable. Jimenez v. Red Star Mfg. Co., D.C., 70 F.Supp. 942, held that certain rest periods (the duration of which were not specified) were non-compensable because "of sufficient length for plaintiffs to leave the premises of defendant for their own personal purposes." So also the cases of Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124, upon which the Secretary places strong reliance, while somewhat analogous, are sufficiently different upon the facts to make them indecisive of the facts in this case.

It seems to us on the undisputed facts of the case that while the fifteen minute rest periods are beneficial to the employees they are equally, if not more so, to the benefit of the employer. This is borne out by the employer's testimony that the women workers' condition prior to the fifteen minute break period "was just bad all around, bad for them as well as bad for us" and that thereafter at a conference the suggestion of the employees for the fifteen minute break periods was adopted; that at first it was optional with the workers whether they took it or not but when the employer saw the benficial results the two break periods were mandatory.[4]

The Government relies upon the statement in the Armour and Skidmore cases, supra, to the effect that hours worked are not necessarily limited to time spent in active labors, but include time given to the employee by the employer. The Government also relies upon the holding in Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330, where it was held that time for changing clothes was part of the employment time; and upon Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, in which it was held that knife-sharpening time was a part of employment time. In both cases it was held that the time in question had such close relationship to the employment and was beneficial to the employer so as to make it a part of the compensable time. The Government also relies upon a series of workmen compensation cases where injury resulted to workmen during rest periods for which they were paid, the court holding that the injury or death arises out of or in course of employment.[5] The gist of all these holdings is that when time out is of such a nature that it bears a relationship to employment time and is beneficial to the employer it may be found to be incidental to employment and compensable.

The Secretary also places strong reliance upon the interpretations and regulations of the Administrator. On June 10, 1940, the Administrator issued an interpretative press release declaring that short rest periods up to and including twenty minutes should be compensated. This directive went to all field representatives. This interpretation has been consistently adhered to by the Administrator since that time. In December, 1955, he issued a revised order stating that "Rest periods of short duration running from 5 to 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked." This regulation is not materially different from the interpretative press release of June 10, 1940.

■ An administrative regulation or interpretation of an act which is the Administrator's duty to administer does,

---

4. The employer testified that the break periods enabled four of the poorest workers, within two or three weeks, to become the best workers in the shop and that if the rest periods were not required he would have to put on another shift to maintain production.

5. Sullivan's Estate v. Motor Realty Corp., 272 App.Div. 986, 73 N.Y.S.2d 276; Rucker v. Nassau-Beekman Realty Corp., 272 App.Div. 982, 73 N.Y.S.2d 275.

of course, not make the law and will be set aside if clearly erroneous. But all the decisions admonish that such regulations and interpretations are entitled to great weight and should not lightly be set aside.[6] When Congress in 1949 amended the Fair Labor Standards Act it provided in Section 16(c), 29 U.S.C.A. § 208 note that all past orders, regulations and interpretations of the Administrator should remain in force and effect except only insofar as they were inconsistent with such amendments. The Supreme Court has relied upon this Section in at least three recent decisions in giving effect to prior existing administrative interpretations and regulations.[7] Aside from the fact that the Administrator's interpretative bulletin adhered to since 1940 is entitled great weight, we are in agreement with him as to the correct interpretation of the Act as it relates to the question of short break periods, generally referred to as "coffee breaks." We may well take judicial knowledge of the fact, as pointed out in the interpretative bulletin, that coffee breaks or short rest periods are rapidly becoming an accepted part of employment generally. While no doubt they are beneficial to the employees, they are equally beneficial to the employer in that they promote more efficiency and result in a greater output, and that this increased production is one of the primary factors, if not the prime factor, which leads the employer to institute such break periods. Significant of this trend is the fact that a number of states by statute or orders provide for short rest periods and provide that such periods shall be compensated as work time.[8]

■ While the trial court does not apparently place its decision on the ground that these women workers were marginal workers, it seems to have been of the view that they were marginal workers and was somewhat influenced thereby. The court expressed the view that these were "marginal" type employees and that "both the employer and employee are benefitted." Marginal workers would seem to be those excluded from full participation of the benefits of the Act, under 29 U.S.C.A. § 214, which provides for the employment of individuals whose earning capacity is somewhat impaired under special certificates issued by the Administrator. The mere fact that these women are middle aged does not make them marginal workers. They are more efficient and do more work than either young men or middle aged men.

■ ■ As pointed out, no hard or fast rule can be laid down in these cases and each must be decided upon its own facts and circumstances. The fact that these rest periods were adopted by agreement and it was agreed that the employees should receive no pay for such time is not decisive. Waiver of statutory wages by agreement is not permissible.[9] The time involved here under the conditions of employment is such that it cannot be effectively used by the employees for purposes not connected with their employment. The benefits to the employer are so substantial that the rest periods are now mandatory and the employees may not use them if they desire to try to increase their earnings. Under all the facts and circumstances of the case, we conclude that the time in question bears a close relationship to employment and is, therefore, compensable.

6. Sun Pub. Co. v. Walling, 6 Cir., 140 F. 2d 445, and cases there cited; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124.

7. Alstate Const. Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; Maneja v. Waialua Agr. Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040; Steiner v. Mitchell, 350 U.S. 247, 76 S.Ct. 330.

8. Nevada Compiled Statutes, Supplement 1943–1949, § 2825.47; Wyoming Compiled Statutes 1945, 1953 Cumulative Pocket Supplement, § 54–703; Arizona Wage Order No. 2–A; Oregon Wage Order No. 1; Washington Wage Order No. 45.

9. Brooklyn Savings Bank v. O'Neil, 324 U. S. 697, 65 S.Ct. 895, 89 L.Ed. 1296.

The judgment is, therefore, reversed and the cause is remanded with directions to proceed in conformity with the views expressed herein.