DON SANTESSON, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. M. ALMODÓVAR ACEVEDO, JUDGE, Respondent; RAMÓN FUENTES, Intervener.

No. 2272.   Resubmitted April 28, 1961.—Decided May 3, 1961.

*Angel Viera Martínez* for petitioner.   *Guillermo Pierluissi* for intervener.   *Juan T. Peñagarícano, Víctor M. Marchán* and *Abraham Freyre* for the Economic Stabilization Administrator.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Ramón Fuentes built a house in the year 1951, the second floor of which was leased to the petitioner Don Santesson on March 14, 1953 for a monthly rental of $250.   Subsequently, on January 23, 1954, the parties subscribed a new lease contract but the rent was not altered.   Fuentes did not comply with the provision that requires the recording of the premises

devoted to rental until the next July 31.[1]   On September 20 of said year, Santesson complained to the Economic Stabilization Administration in relation to the rental he was paying, and said agency, on the same date, notified the landlord a temporary order indicating its purpose of fixing a maximum rental of $170 for the leased premises.

On February 17, 1955 the corresponding hearing was held before the Economic Stabilization Administration, and as a result thereof a definite order was rendered reducing the rental to $170, effective on February 1, 1955.   Santesson had vacated the premises on October 29, 1954.

The petitioner requested the review of this final order because he believed that its effective date should have been March 14, 1953, date in which he occupied the premises in question for the first time.   The Superior Court, San Juan Part, rendered a judgment by virtue of which it modified the order fixing the rental for the sole purpose of making it retroactive to the date in which the provisional order was rendered, that is, September 20, 1954.   It also ordered the reimbursement of the overcharged rental to Santesson, for the period between September 20 and October 29, 1954, date in which he had vacated the leased property.

The petitioner filed a petition for certiorari against said judgment.   We issued the writ.   The landlord did not challenge said judicial determination, and in regard to him said judgment is final and definitive.

---

[1] Section 9 of the Reasonable Rents Act, No. 464 of April 25, 1946 (Sess. Laws, pp. 1326–1342, 17 L.P.R.A. § 189), provides in its pertinent part that "it shall be the duty of every landlord to register in the Office of Rent-Control Administration within thirty (30) days following the date of the promulgation of the rules which the Administrator may adopt for the purpose, and in accordance with said rules, all his rental properties. . . ."   The Regulation of the Rent Administration was in effect on November 1, 1946.   The effective Regulation at the present time was approved on January 12, 1959.   In the course of this opinion we shall refer to the former as "the original regulation" and to the latter as the "regulation in effect."

■ The only question involved is whether the final order fixing the rentals should have been made retroactive to the date of the original lease. It is necessary to first establish that since the building had been constructed subsequent to October 1, 1942 and to July 25, 1946, it had no "basic rent", and that the rent fixed by the Administrator is the "reasonable rent" to which the Act refers.[2]

Section 6 of the Reasonable Rents Act (17 L.P.R.A. § 186), provides that "In cases where the Administrator adjusts the rent which was being paid prior to the date of the taking effect of this section or issues a final order on any rent, fixing in lieu thereof the reasonable rent as herein determined, the tenant shall be required to pay only the basic rent or the reasonable rent fixed for the purpose, but he shall not be entitled to any reimbursement or claim for any payment made in excess of the reasonable rent prior to the date on which the latter may be fixed, except in those cases where by express provision of this Act the rent automatically adjusts to the amount prevailing on October 1, 1942, and except in such cases where the Administrator issues a temporary order increasing or fixing the maximum rent until the case is finally decided; *Provided*, that the rent so increased or fixed shall be subject to reimbursement to the tenant as to the amount in excess of the maximum rent that may be fixed by the final order." It is clear that the Act in such cases where a "reasonable rent" has been fixed, only permits the retroactive reimbursement to the date on which the provisional order of reduction has been rendered. It does not authorize, therefore, that the retroaction be made to the date the premises are occupied for the first time.

---

[2] In *Mejías* v. *Superior Court; Nadal, Int., post,* p. 546 (1961), we related the cases in which the Administrator may fix a reasonable rent. It is sufficient to remember that the fixing of a reasonable rent does not proceed when the immovable leased has a basic rent or frozen rent, except for the cases referred to in said opinion.

544

■ Now, the petitioner alleges that his rights flow from the provisions of § 4(e) of the original regulation[3] which says:

"In any case pursuant to Sec. 4b, where the date of the lease is subsequent to the effective date of this Regulation, the landlord is bound to register the commercial premises within the 30 days after the date of said lease, as provided in Sec. 7. If the landlord files a proper registration statement within the time specified and thereafter the Administrator fixes a maximum rent in an amount less than that fixed by the landlord, the decrease shall have a prospective character. If the registration statement is filed after the time specified, any decrease in the rent shall be retroactive to the date of the first rent. Such amount shall be refunded within 30 days after the date of the issuance of the order fixing the maximum rent. If the landlord proves that he did not register on time for just cause, the order fixing the maximum rent may relieve the landlord of the duty to refund. The foregoing provisions, as well as any refund made by virtue thereof, do not affect in any way the civil or criminal responsibility in which the landlord may have incurred for failure to register timely as provided by Sec. 7."

It is convenient to make clear that this provision of the Regulation is practically a literal translation of the Federal Rent Regulation rendered by virtue of the Act known as "Emergency Control Act" of 1942, which does not contain, in regard to the refund to tenants for the rent paid in excess, the express limitations which appear in § 6 of the local Act. Insofar as the provisions of the original regulation are contrary or incompatible to the Act, they cannot prevail. *Alvarez* v. *Sec. of the Treasury*, 80 P.R.R. 15 (1957) ; *Pagán* v. *Tax Court*, 73 P.R.R. 605 (1952) ; *Descartes* v. *Tax Court*, 71 P.R.R. 440 (1950) ; *Cabassa* v. *Rivera*, 68 P.R.R. 654 (1948) ; *Mitchell* v. *Greinetz*, 235 F.2d 621 (Cir. 10, 1956) ; *Wright* v. *Bayowski*, 152 N.E.2d 441 (1957).

---

[3] The regulation in effect contains a provision for reimbursement which is a literal copy of the pertinent part of § 6 of the Act which we previously transcribed. 17 R. & R.P.R. § 186–16.

It is true that in *Peñagarícano* v. *Superior Court; Nadal, Int.,* 81 P.R.R. 849 (1960), we said that the Administrator's order deprived the tenants of a right to a higher reimbursement every month of all the excess on the frozen rent from the date that they occupied the house, but the situation de facto there involved was different as it was a property with a basic rent on October 1, 1942. It did not deal with a reasonable rent fixed by the Administrator. However, on page 852 of said opinion we established the solution applicable to a case which deals with a property that does not have a frozen rent in the same terms we now use for disposing of this appeal. We have considered the reasons stated by the petitioner and not only are we not convinced that we should change the rules set forth in said opinion, but we ratify them as the only correct solution to the situation in question.

The appellant relies with great emphasis on the case of *Vélez* v. *López de la Rosa Hnos., Inc.,* 75 P.R.R. 238 (1953), in which we upheld a reimbursement order of the Administrator which was effective since the date the tenants occupied the leased premises. An examination of said opinion will reveal that the ground on which we prevented the landlord from challenging the order was that he had not appeared timely within the time specified by law for the review of the administrative order, and that said challenge could not be raised for the first time in the action for refund filed by the tenant. Also, that we were dealing with a dwelling that had been leased on October 1, 1942, and therefore, had a "basic rent."

The petitioner also alleges that § 4 (e) of the Regulation should be upheld as a penalty imposed for noncompliance with the obligation of registering the leased premises. We cannot agree with this theory because the law does not authorize the Administrator to establish penalties and certainly, such power cannot be inferred from § 5 (d) of the Act (17 L.P.R.A. § 185 (d)). On the other hand, when the Leg-

546

islature attempted to impose penalties it did so expressly. See §§ 6, 8, 12-J, and 19 (17 L.P.R.A. §§ 186, 188, 202, and 210).

The writ issued will be quashed, and the judgment rendered by the Superior Court, San Juan Part, on February 1, 1956, will be affirmed.