Troy ARTHUR and O. J. Arthur, Plaintiffs,

v.

K. D. EMRICK WELL SERVICING COMPANY, a Corporation, Defendant. Luther Lynn, Intervenor.

Civ. No. 5144.

United States District Court
E. D. Oklahoma.
Oct. 16, 1962.

Raymond Criswell, Wewoka, Okl., for plaintiffs and intervenor.

Horsley, Epton & Culp, and G. O. Wallace, Wewoka, Okl., for defendant.

BOHANON, District Judge.

This case was brought by Troy Arthur and O. J. Arthur against K. D. Emrick Well Servicing Company for alleged unpaid overtime, as provided by 29 U.S.C. § 201 et seq., as amended, commonly referred to as Fair Labor Standards Act of 1938. Luther Lynn, by permission of the Court, intervened. The claimants will be referred to herein as plaintiffs. The claims of the plaintiffs are identical. It is charged by plaintiffs and admitted by the defendant that defendant was engaged in interstate commerce within the meaning of the Act, supra.

The case was tried by the Court without the intervention of a jury. The pertinent and controlling facts will be stated in this opinion.

The defendant owned and operated oil well servicing units in the area surrounding Seminole County, Oklahoma. Defendant's office and yard was located in Seminole County. Its business was to furnish what is commonly known in the oil industry as a well servicing "unit," required from time to time to do certain clean-out and overhaul work on oil wells. This work consisted of various operations, such as the pulling of tubing from wells and cleaning out sand or rock substances so as to make such wells more productive or less expensive to operate. The defendant's equipment was made available, on order, to oil companies or the operators of oil and gas leases to perform any work required by the operators. The well servicing units were ordered and furnished on an hourly basis, computed from the time the unit left the yard of the defendant until it was returned. Plaintiffs, who were members of the crew or crews operating these units, were paid by the defendant on an hourly basis for the same number of hours that defendant was paid by the lease operator for its unit.

The use of defendant's units by various oil operators was of an irregular nature. They were used only when and if ordered by the operators of oil wells, and then only for such time as needed to perform the required services. On some days all of defendant's units would be working, while on others only some would be under contract, and on other days perhaps all would be idle.

The claimants, and former employees testified they were employed and ordered to report to defendant's headquarters for duty and remain during the hours hereinafter stated, unless they were otherwise on duty with their units. The defendant and the office manager, and employees yet employed by defendant testified that they and all employees were to report at 7:30 a. m. each morning and if there was no work for the respective units, they were permitted to go any place they chose. They were required to leave with the office manager information where they could be reached, if work became available.

Plaintiffs were not employees in the ordinary sense, in that they worked only irregular hours when needed, and were not employed on a daily, weekly or monthly basis. The employment of each of the plaintiffs began when the unit left defendant's yard, and ended when the unit was returned. It is true that each of the plaintiffs was, during all the times under consideration, available to the defendant to operate defendant's units, but the employment was not that of a continuing nature, but ended when each particular job had been completed.

Plaintiffs allege and contend that at times when no work was available they were required to report to the yard or headquarters of the defendant at 7:00

a. m. each morning and remain until 1:30 p. m. on weekdays and 9:00 o'clock on Sundays, and to remain there during such hours under the direction and supervision of the defendant, whether work was available or not. It is for this so-called "waiting time" that plaintiffs bring this action. There is no dispute between the parties regarding the payment for regular time or overtime covering the actual working hours of the plaintiffs. It is true that plaintiffs did spend a great deal of time at defendant's headquarters or yard when there was no work to be done. However, they were at liberty to leave the premises at any time they wished and pass their time in any manner they saw fit, without restriction or limitation. The plaintiffs were required to make known to the defendant where they could be reached by telephone if work became available. If plaintiffs could not be reached, defendant would employ others. This is the general custom in the oil industry in Oklahoma with respect to the operation of a business such as defendant's.

The conduct of the parties and a practical construction of the working arrangement, the nature of the services of the workmen, and the services which the defendant itself performed for the oil companies and the relationship at the time when plaintiffs were waiting to be employed, as it related to the time actually worked, and all of the surrounding circumstances, convinces the Court that the plaintiffs were in truth and in fact waiting to be employed and were not employed by the defendant to wait. These are considerations which the Court may and should consider.

The proof shows that each of the claimants worked regularly each week while in defendant's employment an average of between 50 and 58 hours per week, and were paid time and a half for all hours in excess of 40 hours worked in each week, all as provided by law.

It should be noted that plaintiffs made no complaint that they were not paid for such alleged stand-by time, and the defendant at all times acted in good faith upon the belief that it was complying with the law.

Under these circumstances and facts, as above stated, the Court is of the opinion and so holds that plaintiffs are not entitled to recover pay for the time which they voluntarily spent at defendant's headquarters or yard waiting for work. Judge Huxman, in Mitchell, Secretary of Labor, United States Department of Labor, Appellant v. Greinetz, doing business as Los Wigwam Weavers, Appellee, 10 Cir., 235 F.2d 621, at page 623, 61 A.L.R.2d 956, aptly and clearly stated the general rule, insofar as possible, with respect to this class of cases, and said:

"Whether idle time is compensable or not is sometimes a difficult question to answer. All the cases make it clear that under certain conditions it is a part of employment time and must, therefore, be compensated. While in the main the factors which must be considered are well known, the difficulty as always comes when we undertake to apply them to a given state of facts, and because facts differ decided cases are not controlling and are helpful only as they point the way. Some of the factors to consider are whether idle time is spent predominantly for the employer's or employee's benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time. The cases also make it clear that the answers to these questions must be gleaned from all the facts and circumstances of each case."

The distinction which must be kept in mind in this class of cases between "working" and "being available for work" is indicated in Skidmore v. Swift & Company (5 Cir.) 136 F.2d 112; 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124,

wherein the Court said, page 137 of 323 U.S., page 163 of 65 S.Ct.:

"Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself. * * * The law does not impose an arrangement upon the parties. It imposes upon the courts the task of finding what the arrangement was."

Based upon the stated facts, and in the light of the custom of long standing in Oklahoma, the Court holds that plaintiffs were not engaged to wait, but waited to be engaged.

Judgment is rendered in favor of the defendant, denying plaintiffs the relief prayed for. Counsel for the defendant will prepare and submit an appropriate decree.