**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2685
_____

SECRETARY UNITED STATES DEPARTMENT OF
LABOR

v.

AMERICAN FUTURE SYSTEMS, INC. d/b/a
PROGRESSIVE BUSINESS PUBLICATIONS, a
Corporation; EDWARD SATELL, Individually and as
President of the above referenced Corporation,

Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(No. 2-12-cv-06171)
District Judge: Honorable Mark A. Kearney[1]
_____

Argued
February 9, 2017
_____

---

[1] The District Court opinion was authored by Judge Restrepo
before he was appointed to this Court. The case was
thereafter transferred to Judge Kearney.

Before: McKEE, RENDELL, FUENTES, *Circuit Judges*.

(Opinion Filed: October 13, 2017)
_____

Alfred W. Putnam, Jr., Esq. **[ARGUED]**
Dorothy A. Hickok, Esq.
Drinker Biddle & Reath
18th & Cherry Streets
One Logan Square, Suite 2000
Philadelphia, PA 19103

Sarah E. Bouchard, Esq.
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Lincoln O. Bisbee, Esq.
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Suite 800 North
Washington, DC 20004

      *Attorneys for Appellants*

M. Patricia Smith, Esq.
Jennifer S. Brand, Esq.
Paul L. Frieden, Esq.
Rachel Goldberg, Esq. **[ARGUED]**
Office of the Solicitor
U.S. Department of Labor
200 Constitute Avenue, N.W.
Room N-2716
Washington, DC 20210

      *Attorneys for Appellee*

Jonathan S. Krause, Esq.
Klehr Harrison Harvey Branzburg
1835 Market Street
Suite 1400
Philadelphia, PA 19103

*Attorney for Amicus-Appellant*

Margaret W. Williamson, Esq.
A Better Balance
80 Maiden Lane
Suite 606
New York, NY 10038

*Attorney for Amicus-Appellee*

_____

OPINION OF THE COURT
_____

McKEE, *Circuit Judge*.

## I. INTRODUCTION

We are asked to decide whether the Fair Labor Standards Act requires employers to compensate employees for breaks of 20 minutes or less during which they are logged off of their computers and free of any work related duties. For the reasons set forth below, we conclude that the Fair Labor Standards Act does require employers to compensate employees for all rest breaks of twenty minutes or less. Accordingly, we will affirm the District Court's decision.

## II. FACTS AND PROCEDURAL HISTORY

American Future Systems, d/b/a Progressive Business Publications, publishes and distributes business publications and sells them through its sales representatives. Edward Satell is the President, CEO, and owner of the company.

3

Sales representatives are paid an hourly wage and receive bonuses based on the number of sales per hour while they are logged onto the computer at their workstation. They also receive extra compensation if they maintain a certain sales-per-hour level over a given two-week period.

Progressive previously had a policy that gave employees two fifteen-minute paid breaks per day. In 2009, Progressive changed its policy by eliminating paid breaks but allowing employees to log off of their computers at any time. However, employees are only paid for time they are logged on. Progressive refers to this as "flexible time" or "flex time" and explains that it "arises out of an employer's policy that maximizes its employees' ability to take breaks from work at any time, for any reason, and for any duration."[2]

Furthermore, under this policy, every two weeks, sales representatives estimate the total number of hours that they expect to work during the upcoming two-week pay period. They are subject to discipline, including termination, for failing to work the number of hours they commit to.[3] Progressive also sends representatives home for the day if their sales are not high enough[4] and sets fixed work schedules or daily requirements for representatives when that is deemed necessary.[5]

Apart from those requirements, representatives can decide when they will work between the hours of 8:30 AM and 5:00 PM from Monday to Friday, so long as they do not work more than forty hours each week.[6] As noted above, during the work day, they can log off of their computers at any time, for any reason, and for any length of time and may leave the office when they are logged off. Employees choose their start and end time and can take as many breaks as they please. However, Progressive only pays sales representatives

---

[2] Appellant's Br. at 4.
[3] **JA-201-06, 401, 479, 516, 525-31, 939-43, 1059, 1082, 1252.**
[4] **JA-1064, 1083, 1093, 1220, 1250.**
[5] **JA-940-47.**
[6] **JA-523.**

for time they are logged off of their computers if they are logged off for less than ninety seconds. This includes time they are logged off to use the bathroom or get coffee. The policy also applies to any break an employee may decide to take after a particularly difficult sales call to get ready for the next call. On average, representatives are each paid for just over five hours per day at the federal minimum wage of $7.25 per hour.[7]

The Secretary filed suit against Progressive and Satell alleging that they violated the FLSA by failing to pay the federal minimum wage to employees subject to this policy, and by failing to maintain mandatory time records.[8] The Secretary of Labor argued that this policy violated section 6 of the Fair Labor Standards Act[9] "by failing to compensate . . . sales representative employees for break[s] of twenty minutes or less . . . ."[10] The Secretary sought to recover unpaid compensation owed to Progressive's employees, an equal amount in liquidated damages, and a permanent injunction enjoining Progressive from committing future violations.[11]

Progressive moved for summary judgment, and the Secretary moved for partial summary judgment on select issues, including its minimum wage claim and claim for liquidated damages. The District Court denied Progressive's motion and granted the Secretary's motion in part.[12] In doing so, the court noted that the Department of Labor ("DOL") has

---

[7] JA-847.

[8] 29 U.S.C. §§ 206, 211(c).

[9] 29 U.S.C. § 206.

[10] Appellee's Br. at 2-3.

[11] 29 U.S.C. §§ 216(c), 217.

[12] The Secretary moved for summary judgment on FLSA minimum wage liability, FLSA recordkeeping liability, and Satell's role as an employer under the FLSA, liquidated damages, and willfulness, but not on the actual damages calculation. The District Court denied the Secretary's motion with respect to willfulness of the violations. *Perez v. Am. Future Sys., Inc.*, No. 12-6171, 2015 WL 8973055, at *1 n.1 (E.D. Pa. Dec. 16, 2015).

consistently applied the Wage and Hour Division's ("WHD")[13] interpretation of the FLSA under 29 C.F.R. § 785.18 to this kind of break. That regulation provides that:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.[14]

The District Court afforded the Secretary's interpretation of section 785.18 substantial deference.[15] It agreed that section 785.18 created a bright-line rule and concluded that Progressive therefore violated the FLSA by failing to pay its employees for rest breaks of twenty minutes or less. This appeal followed.

## III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo.[16] Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law, and there is no genuine dispute as to any material fact.[17] In reviewing a motion for summary judgment, we view the evidence in the light most favorable to the non-moving party.[18] We refrain

---

[13] Congress delegated authority to WHD to administer the FLSA. *See* 29 U.S.C. § 204(a) ("There is created in the Department of Labor a Wage and Hour Division which shall be under the direction of an Administrator, to be known as the Administrator of the Wage and Hour Division . . . .").

[14] 29 C.F.R. § 785.18.

[15] *See Skidmore v. Swift Co.*, 323 U.S. 134 (1944).

[16] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[17] *See, e.g.*, *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir. 1996).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

from making credibility determinations or weighing the evidence.[19]

We review the District Court's decision to deny or limit liquidated damages for abuse of discretion.[20] Although we must apply the clearly erroneous standard of Federal Rule of Civil Procedure 52(a) when reviewing the District Court's findings of fact "which underlie its 'good faith' and 'reasonableness' determinations . . . and the finding of subjective good faith itself, we exercise plenary review of the [D]istrict [C]ourt's legal conclusion that [a party] had 'reasonable grounds for believing' that its violative conduct was not a violation of the FLSA."[21]

## IV. DISCUSSION

Progressive advances three arguments on appeal: (1) that time spent logged off under its flexible break policy categorically does not constitute work; (2) that the District Court erred in finding that WHD's interpretive regulation on breaks less than twenty minutes long, 29 C.F.R § 785.18, is entitled to substantial deference; and (3) that the District Court erred in adopting the bright-line rule embodied in 29 C.F.R. § 785.18 rather than using a fact-specific analysis. We do not find any of these arguments persuasive.

### A. Applicability of the FLSA

Progressive first argues that under its policy, because employees are basically free to do anything they choose and can even leave the job site when logged off of their computers, the time when employees are logged off of their computers does not constitute "work," and therefore, the FLSA does not apply. We disagree.

---

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
[20] *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991).
[21] *Id.* (citation omitted).

7

The FLSA governs compensation for "hours worked."[22] But it does not define "work."[23] It is well established that some breaks constitute "hours worked" under the FLSA.[24] Thus, hours worked is not limited to the time an employee actually performs his or her job duties.[25] The FLSA does not require employers to provide their employees with breaks. However, if an employer chooses to provide short breaks of five to twenty minutes, the employer is required to compensate employees for such breaks as hours worked.[26]

Progressive argues that it does not have a "break policy" per se. Rather, it claims that the "flexible time" policy described above, which allows employees to do whatever they wish and be wherever they want for periods of twenty minutes or less while logged off of their computers, does not constitute "hours worked." According to Progressive, since the FLSA does not require it to provide breaks, it does not need to compensate its employees for these periods.

Although Progressive's position may have some superficial appeal, it cannot withstand scrutiny. According to Progressive, if an employer has a policy allowing employees to log off and leave their work stations at any time, for any reason, it does not have to compensate employees if they take a break. Progressive does not deny that it permits employees to log off; it just refuses to call those time periods "breaks." This misses the point of the FLSA's regulatory scheme. Its protections cannot be negated by employers' characterizations that deprive employees of rights they are

---

[22] 29 C.F.R. § 778.224 ("Under the Act an employee must be compensated for all hours worked.").

[23] *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).

[24] *See Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 331 (3d Cir. 2016).

[25] *See Armour & Co. v. Wantock*, 323 U.S. 126, 133-34 (1944).

[26] *See* 29 C.F.R. § 785.18.

entitled to under the FLSA.[27] The "log off" times are clearly "breaks" to which the FLSA applies.

The policy that Progressive refers to as "flexible time" forces employees to choose between such basic necessities as going to the bathroom or getting paid unless the employee can sprint from computer to bathroom, relieve him or herself while there, and then sprint back to his or her computer in less than ninety seconds. If the employee can somehow manage to do that, he or she will be paid for the intervening period. If the employee requires more than ninety seconds to get to the bathroom and back, the employee will not be paid for the period logged off of, and away from, the employee's computer. That result is absolutely contrary to the FLSA.[28]

---

[27] *See* Amicus Curiae A Better Balance and National Employment Law Project, Inc. Br. at 4 ("The FLSA was passed to 'lessen, so far as seemed then practicable, the distribution in commerce of goods produced under subnormal labor conditions,' *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947), by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President to Congress, May 24, 1937)").

[28] Indeed, unless he or she has access to something akin to a Portkey, if an employee is sufficiently athletic to get from workstation to bathroom, relieve himself or herself, wash his or her hands, and return to the workstation in ninety seconds, it is highly unlikely that the employee would be working at Progressive for a minimum wage rather than playing for a professional sports franchise or advertising a brand of athletic footwear. Moreover, given the time restraints imposed by certain biological necessities beyond the employee's control, we doubt an employee could manage this feat even if he or she had access to a Portkey. *See* J.K. Rowling, Harry Potter and the Goblet of Fire 70 (Scholastic Inc. 1st ed. 2000) (In the Harry Potter series, Portkeys are "objects that are used to transport wizards from one spot to another . . . .").

The FLSA is a "humanitarian and remedial legislation" and "has been liberally interpreted."[29]

Although employers need not have any break policy, we refuse to hold that the FLSA allows employers to circumvent its remedial mandates by disguising a break policy as "flexible time," as Progressive is seeking to do here. Accordingly, we find that Progressive does have a break policy, and thus, the FLSA applies. We therefore must determine if this break policy is contrary to the FLSA.

## B. *Skidmore* Deference

The FLSA is silent as to the specific requirements regarding "break" periods, but WHD's interpretation is clear. The parties agreed at the District Court level that *Skidmore*[30] would determine the level of deference owed to WHD's interpretation in section 785.18. Progressive argues that the District Court overstated this level of deference. It contends that WHD's interpretation "do[es] not have the force of law."[31] Instead, the regulations are merely "positions [the DOL] will take in the enforcement of the Act."[32] While it is true that these interpretations are not technically "law," the regulations nevertheless "constitute a body of experience and

---

[29] *Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir. 1987) (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).

[30] 323 U.S. 134. The parties agree that the level of deference required under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), is not applicable.

[31] *Babcock v. Butler County*, 806 F.3d 153, 157 n.7 (3d Cir. 2015) ("In evaluating the effect of these regulations, it is significant to keep in mind that the Supreme Court has commented that interpretive regulations issued by the Secretary of the Department of Labor under the FLSA do not have the force of law; the regulations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" (quoting *Skidmore*, 323 U.S. at 140).

[32] 29 C.F.R. § 785.2.

informed judgment to which courts and litigants may properly resort for guidance."[33]

An agency's interpretation of a statute "may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency . . ., and given the value of uniformity in its administrative and judicial understandings of what a national law requires."[34]  The weight afforded the agency's interpretation "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."[35]

We have "adopted *Mead*'s conceptualization of the Skidmore framework as a 'sliding-scale' test in which the level of weight afforded to an interpretation varies depending on [the] analysis of the enumerated factors."[36]  Those factors include whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy.[37]

---

[33] *Babcock*, 806 F.3d at 157 n.7 (quoting *Skidmore*, 323 U.S. at 140).

[34] *De Leon-Ochoa v. Att'y Gen. U.S.*, 622 F.3d 341, 349 (3d Cir. 2010) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001), 533 U.S. at 234-35) (internal quotation marks omitted).

[35] *Mead*, 533 U.S. at 228 (quoting *Skidmore*, 323 U.S. at 140).

[36] *Hagans v. Comm'r of Social Sec.*, 694 F.3d 287, 304 (3d Cir. 2012) (quoting *Mead Corp.*, 533 U.S. at 228).

[37] *Id.* at 304-05; *see also Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801, 808 (3d Cir. 1999) (if an agency has been granted administrative authority by Congress, *Skidmore* deference is warranted "as long as it is consistent with other

Applying these factors, we conclude that WHD's interpretation, as set forth in section 785.18, should be afforded the highest level of deference under *Skidmore*. First, Congress ratified WHD's interpretation, which had been in place since 1940, by enacting former section 16(c) of the FLSA in 1949.[38] It states that:

> Any order, regulation, or interpretation of the Administrator of the Wage and Hour Division or of the Secretary of Labor . . . in effect under the provisions of the Fair Labor Standards Act of 1938, as amended, on the effective date of this Act, shall remain in effect as an order, regulation, interpretation, . . . except to the extent that any such order, regulation, interpretation . . . may be inconsistent with the provisions of the Act . . . .[39]

Second, WHD's interpretation of the regulations controlling this dispute has been consistent throughout the various opinion letters the DOL has issued to address this matter.[40]  The Department of Labor

---

agency pronouncements and furthers the purposes of the Act.").

[38] *Steiner v. Mitchell*, 350 U.S. 247, 255 n.8 (1956).

[39] *Id.* (citing Fair Labor Standards Amendments of 1949, Pub. L. No. 393, section 16(c), 63 Stat. 910, 920 (1949), 29 U.S.C. § 208 note).

[40] U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Aug. 13, 1964) (JA 1351-52) ("[I]f [break] periods are given and are of short duration (normally 20 minutes or less) they must be counted as hours worked and the employees must receive compensation for them. . . .  The way in which the employee utilizes his time during the rest periods described in your letter, or the name attached to them, is irrelevant, and the absence of such breaks in the past would not relieve an employer from compensating his employees for them when they occur."); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Oct. 13, 1964) (JA-1353) ("[R]est periods of short duration, running from 5 minutes to about 20 minutes,

12

has consistently held for over 46 years that such breaks are hours worked under the FLSA, without evaluating the relative merits of an employee's activities. This position [is] found at 29 C.F.R. 785.18 . . . . The compensability of short breaks by workers has seldom, if ever, been questioned . . . . The FLSA does not require an employer to provide its employees with rest periods or breaks. If the employer decides to permit short breaks, however, the time is compensable hours worked.[41]

Third, we have no difficulty concluding that WHD's interpretation is reasonable given the language and purpose of the FLSA. In enacting the FLSA, Congress recognized the effect of labor conditions that are "detrimental to the maintenance of the minimum standard of living necessary for

---

must be counted as hours worked."); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 25, 1995) (JA-1361-62) ("[R]est periods . . . of short duration, running from 5 to 20 minutes are common in industry. . . . It is our long-standing position that such breaks must be counted as hours worked. The fact that certain employees may choose to smoke during such breaks contrary to their employer's policy would not, in our opinion, affect the compensability of such breaks. . . . While there may be valid health reasons for prohibiting 'smoking breaks,' it does not follow that employee efficiency is not enhanced by such breaks as is the case with respect to 'coffee breaks'. In other words, we think it is immaterial with respect to compensability of such breaks whether the employee drinks coffee, smokes, goes to the restroom, etc. . . . Our views should not, however, be construed to prevent an employer from adopting a policy that prohibits smoking in the workplace, or devising appropriate disciplinary procedures for violations of such policy. But an employer may not arbitrarily fail to count time spent in breaks during the workday because the employee was smoking at his or her workplace or outside thereof.").

[41] U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1996 WL 1005233, at *1 (Dec. 2, 1996).

health, efficiency, and general well-being of workers."[42] The existence of such conditions:

> (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.[43]

Accordingly, the FLSA was designed "to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power."[44] As the District Court explained, it is readily apparent that by safeguarding employees from having their wages withheld when they take breaks of twenty minutes or less "to visit the bathroom, stretch their legs, get a cup of coffee, or simply clear their head after a difficult stretch of work, the regulation undoubtedly protects employee health and general well-being by not dissuading employees from taking such breaks when they are needed."[45]

This interpretation was well within WHD's expertise.[46] Lastly, as the District Court correctly pointed out, "[s]ection 785.18 is a rule that is both longstanding and unchanging. The text of the rule today is identical to the text of the rule when it was

---

[42] 29 U.S.C. § 202(a).

[43] *Id.*

[44] *Id.* § 202(b).

[45] *Am. Future Sys., Inc.*, 2015 WL 8973055, at *7.

[46] 29 U.S.C. § 204(a) ("There is created in the Department of Labor a Wage and Hour Division which shall be under the direction of an Administrator, to be known as the Administrator of the Wage and Hour Division . . . .").

implemented in 1961."[47] Since all of these factors favor WHD's position, the District Court was correct to apply substantial *Skidmore* deference to section 785.18.

### C. Applicability of 29 C.F.R. § 785.16 versus 29 C.F.R. § 785.18

At the District Court level, Progressive also argued that because its employees used the time when they were logged off solely for their own benefit, 29 C.F.R. § 785.16, as opposed to 29 C.F.R. § 785.18, applies to its policy.[48] Before addressing the issue of applying section 785.18 as a bright-line rule, we wish to elaborate on this and note that the District Court correctly held that section 785.18 is applicable to this case.

> Section 785.16 provides that:
>
> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

Conversely, section 785.18 states that "[r]est periods of short duration, running from 5 minutes to about 20 minutes, are

---

[47] *Am. Future Sys., Inc.*, 2015 WL 8973055, at *7 (citing 26 Fed. Reg. 190 (Jan. 11, 1961)).

[48] *Id.* at *5.

common in industry . . . . They *must* be counted as hours worked."[49]

Progressive argued that section 785.16 is applicable here because the "breaks" at issue are unrestricted periods that Progressive provides to its employees to use whenever they want and however they want. Thus, section 785.16, as opposed to section 785.18, applies.

As the District Court held, Progressive's argument fails to recognize that, although section 785.16 provides *general* guidance regarding the compensability of hours worked, section 785.18 sets forth a separate and more specific regulation carving out the compensability of breaks that are twenty minutes or less.[50] The Department of Labor has therefore determined as a matter of labor policy and practical consideration that breaks of twenty minutes or less are insufficient to allow for anything other than the kind of activity (or inactivity) that, by definition, primarily benefits the employer. That is certainly true here where such short work intervals better prepare the sales representative to deal with the next call. Thus, as the District Court correctly explained, in this case where breaks of twenty minutes or less are in question, section 785.16 is inapplicable. We therefore hold that section 785.18 applies to Progressive's "flexible time" policy.

### D. 29 C.F.R. § 785.18 as a bright-line rule

Progressive also argues that section 785.18 should not be enforced as a bright-line rule that would require employers to compensate employees for any breaks that are twenty minutes or less.[51] Rather, Progressive insists that courts

---

[49] 29 C.F.R. § 785.18 (emphasis added).

[50] *See West v. Keve*, 721 F.2d 91, 96 (3d Cir. 1983) ("It is a fundamental principle of statutory construction that the specific language controls over general language.").

[51] By statute, short breaks to express breast milk need not be compensated, 29 U.S.C. § 207(4), and unauthorized extensions of authorized paid breaks need not be

should analyze whether a given break is intended to benefit the employer or the employee. According to Progressive, if the break benefits the employee, she need not be compensated. In support of its argument, Progressive cites *Mitchell v. Greinetz*,[52] which section 785.18 incorporates in interpreting the FLSA,[53] and *Armour & Co. v. Wantock*.[54] We remain unconvinced.

Progressive claims that *Greinetz* mandates a fact-intensive inquiry to determine when idle time is compensable.[55] However, Progressive ignores that the *Greinetz* court deferred to WHD's interpretation and that several courts considering the issue have applied section 785.18 as a bright-line rule.[56] *Greinetz* noted that facts must

compensated. *Lillehagan v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 6989230, at *10 (C.D. Cal. Dec. 10, 2014) (citing Chapter 31a01(c) of DOL Field Operations Handbook, Dec. 15, 2000).

[52] 235 F.2d 621 (10th Cir. 1956).

[53] *See* 29 C.F.R. § 785.18.

[54] 323 U.S. 126, 133 (1944).

[55] *Mitchell*, 235 F.2d at 623 ("Whether idle time is compensable or not is sometimes a difficult question to answer. All the cases make it clear that under certain conditions it is a part of employment time and must, therefore, be compensated. While in the main the factors which must be considered are well known, the difficulty as always comes when we undertake to apply them to a given state of facts, and because facts differ decided cases are not controlling and are helpful only as they point the way. *Some of the factors to consider are whether idle time is spent predominantly for the employer's or employee's benefit, and whether the time is of sufficient duration and taken under such conditions that it is available to employees for their own use and purposes disassociated from their employment time. The cases also make it clear that the answers to these questions must be gleaned from all the facts and circumstances of each case.*" (emphases added)).

[56] *See Lillehagen v. Alorica,* No. 13-0092, 2014 WL 6989230, at *10 (C.D. Cal. Dec. 10, 2014); *Brown v. L & P Indus., LLC*, No. 04-0379, 2005 WL 3503637, at *6 (E.D. Ark. Dec.

17

be considered in determining if breaks are compensable hours worked. However, it also held that WHD's interpretation "adhered to since 1940 is entitled to great weight"[57] and that the court agreed with WHD "as to the correct interpretation of the Act as it relates to the question of short break periods, generally referred to as 'coffee breaks.'"[58] The court explained that although such breaks "are beneficial to the employees, they are equally beneficial to the employer in that they promote more efficiency and result in a greater output, and that this increased production is one of the primary factors, if not the prime factor, which leads the employer to institute such break periods." [59] The court also noted that "a number of states by statute or orders provide for short rest periods and provide that such periods shall be compensated as work time."[60] Accordingly, Progressive's reliance on *Greinetz* is misplaced, as section 785.18 likely referred to it because it explicitly endorsed the interpretation.

Progressive's reliance on *Armour & Co.* is also not persuasive. We realize that the Supreme Court did not apply a bright-line rule in *Armour & Co.*[61] However, Progressive ignores the crucial fact that *Armour & Co.* did not involve the compensability of breaks of twenty minutes or less. It concerned the time between 5 PM to 8 AM during which firefighters "were required to be on their employer's premises, to some extent amenable to the employer's

---

21, 2005); *Kasten v. Saint-Gobain Perform. Plastics Corp.*, 556 F. Supp. 2d 941, 953 (W.D. Wisc. 2008); *Martin v. Waldbaum, Inc.*, No. CV 86-0861, 1992 WL 314898, at *1 (E.D.N.Y. Oct. 16, 1992).

[57] *Greinetz*, 235 F.2d at 625.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] 323 U.S. at 133 ("Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.").

discipline, subject to call, but not engaged in any specific work."[62] The Court used the predominant benefit test to conclude that this time was compensable. The Secretary does not argue that this test should not be used when dealing with breaks of twenty-one minutes or more,[63] and compensability of breaks longer than twenty minutes is not before us.

Progressive's argument for determining the compensability of break times is not only contrary to the regulatory scheme and case law, it would also establish an administrative regimen that would be burdensome and

---

[62] *Id.* at 128.

[63] DOL's 1940 Press Release states:
Employees coming under the provisions of the [FLSA] must be paid for short rest periods . . . . A "short" rest period …will include periods up to and including 20 minutes. *When rest periods customarily taken by employees are longer, final decision on whether or not the employee will be paid for it will rest with the [WHD] Regional Director.* The following considerations will guide the Regional Director in making his decision: the freedom of the employee to leave the premises and go where he pleases during the intermission; the duration of the intermission—whether sufficient to permit the employee reasonable freedom of action and a real opportunity for relaxation; whether the intermission is clearly not an attempt to evade or circumvent the provisions of the [FLSA]. *See* Addendum A to Appellee's Br. (WHD Press Release No. R-837 (June 10, 1940)) (emphasis added); *see also* Addendum C to Appellee's Br. (Field Operations Handbook, 31a01 (Dec. 1955)) ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. . . . Where a regular rest period of known duration is longer than 20 minutes, the waiting time rules apply. In other words, if the employees are free to go where they please, and the rest period is long enough to permit the employees to use it for their own purposes, and if bona fide and not an attempt to evade or circumvent the Fair Labor Standards Act (FLSA) or Walsh-Healey Public Contracts Act (PCA), such periods are not hours worked.").

unworkable. Employers would have to analyze each break every employee takes to determine whether it primarily benefitted the employee or employer. Such an approach "would require a series of tests to evaluate the relative benefit provided to employee and employer and the impact on employee efficiency of each and every small work break ever taken by any employee."[64] This would not only be "an undesirable regulatory intrusion in the workplace with the potential to seriously disrupt many employer-employee relationships," but it would also be difficult, if not impossible, to implement in all workplace settings.[65] "[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18."[66]

Nevertheless, Progressive argues that if a bright-line rule is enforced, employees will be allowed to take any number of breaks during their workday, and as long as they are less than twenty minutes, employers will have to compensate them. We recognize this is a theoretical possibility given the bright line imposed by section 785.18.[67] However, it is not a realistic one. "[W]here the employee is taking multiple, unscheduled nineteen-minute breaks over and above his or her scheduled breaks for example, the

---

[64] *Lillehagen*, 13-0092, 2014 WL 6989230, at *5.

[65] *Id.* at *5-6.

[66] *Id.*

[67] *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act (FLSA), 1996 WL 1005233, at *1 (employer requested that Department of Labor advise whether short smoking breaks of 3 to 4 minutes were compensable when taken in addition to other breaks allowed to employees, and the DOL stated "[t]he FLSA does not require an employer to provide its employees with rest periods or breaks. If the employer decides to permit short breaks, however, the time is compensable hours worked").

employer's recourse is to discipline or terminate the employee—not to withhold compensation."[68]

Progressive notes that the sales representatives:

> may log-off of the computer system at any time of the day, for any reason, and for any length of time, at which point, if they so choose, they may leave the office. . . . Others may work non-stop from the time they arrive until they decide to leave for the day. In other words, [they] choose the time they start, the time they stop, and whether and how much time they take off in-between.[69]

In an argument that is no doubt well-intentioned, Amicus Child Advocates argues that this "flex time" policy allows parents to address child-related needs and that it is essential for "all parents whose children are in out-of-home placement in foster care, and can provide tremendous benefits to parents . . . to deal with essential responsibilities such as scheduling second jobs, attending child-related appointments and . . . handling family-related issues . . ., and providing care for their children."[70] Amicus Childs Advocates also alerts us to a client it represented "who was placed in foster care because her mother was drug addicted. . . . [W]ithin two years, her mother had completed a drug and alcohol program, which allowed her daughter to move back in with her."[71] We do not doubt that such arguments by this Amicus result from a sincere effort to encourage flexible work place policies that are consistent with the organization's efforts to advance the welfare of at-risk children who have a particular need for parental support. However, those arguments, and similar arguments by Progressive, ignore the fact that the examples of employees' use of "break" time that Progressive presents

---

[68] *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 442 (S.D. Ind. 2012).

[69] Appellant's Br. at 6.

[70] Amicus Curiae Support Center for Child Advocates' Br. at 4

[71] *Id.* at 2.

involve activities that cannot generally be performed in twenty minutes. Thus, such examples exaggerate the extent to which the policy is intended to benefit the individual employee as opposed to the employer. This is particularly true if we factor in time getting to and from transportation to get to one's child (or to earn a degree or hold a second job). Accordingly, the restrictions endemic in the limited duration of twenty minutes or less illustrate the wisdom of concluding that the Secretary intended a bright line rule under the applicable regulations.

### E. Liquidated Damages

Progressive also argues that the District Court abused its discretion in awarding liquidated damages.

If an employer violates the minimum wage provisions of the FLSA, it is liable for both the payment of unpaid wages and an additional equal amount of mandatory liquidated damages.[72] Liquidated damages are compensatory. They ease any hardship endured by employees who were deprived of lawfully earned wages.[73]

To avoid mandatory liability for liquidated damages, an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act.[74] The good faith requirement is "a subjective one that requires that the employer have an honest intention to

---

[72] 29 U.S.C. § 216(c) ("The Secretary may bring an action in any
court of competent jurisdiction to recover the amount of
unpaid minimum wages or overtime compensation and an
equal amount as liquidated damages."); *Cooper Elec. Supply Co.*, 940 F.2d at 907.

[73] *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991) ("These liquidated damages are compensatory rather than punitive in nature; they compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due.").

[74] 29 U.S.C. § 260; *Selker Bros.*, 949 F.2d at 1299.

ascertain and follow the dictates of the Act."[75] The reasonableness requirement is an objective standard.[76] An employer bears a "plain and substantial" burden to prove it is entitled to discretionary relief from liquidated damages.[77]

Here, Progressive's insufficient efforts to investigate and comply with the FLSA neither satisfy that substantial burden, nor undermine the propriety of the District Court's finding of bad faith. Satell stated that he changed Progressive's policy in 2009 to "ensure that employees across all call centers were being treated equally with respect to breaks, and specifically rebuked the suggestion that the policy change was motivated by the close-in-time increase in the minimum wage."[78] He explains that in fashioning the policy, he reviewed the DOL website, and "'then tr[ied] to get as much guidance as [he] could from the [Department of Labor].'"[79] Satell also obtained legal advice and read several opinions from various courts on the matter.[80] Additionally, he held about a dozen meetings with Progressive's Director of Call Center Operations to discuss the new policy.[81] However, he admits that he was at least "vaguely aware" of 29 C.F.R. § 785.18.[82]

In assessing liquidated damages, the District Court noted that Satell sought advice of counsel, but he refused to waive the attorney-client privilege and disclose this advice to the court. Satell's testimony placed the court in an untenable position of having to assume that counsel's advice was

---

[75] *Cooper Elec. Supply*, 940 F.2d at 907 (alterations, citations, and internal quotation marks omitted).
[76] *Id.* at 907-08; *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982) ("an employer may not rely on ignorance alone in meeting the objective test.").
[77] *Cooper Elec. Supply*, 940 F.2d at 907 (quoting *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128-29 (3d Cir. 1984).
[78] *Am. Future Sys., Inc.*, 2015 WL 8973055, at *13.
[79] *Id.* (alterations in original).
[80] *Id.*
[81] *Id.*
[82] *Id.*

consistent with the adopted policy while ignoring the fact that Satell refused to tell the court what counsel advised. The District Court concluded that, given the unwillingness to share what it was told by counsel, "it is entirely possible that Defendants implemented the new break policy in 2009, despite being told by one or more of its lawyers that the policy violated the FLSA. It would be an absurd result to classify such conduct as 'good faith' . . . ."[83]

Progressive argues that the District Court abused its discretion in finding that it did not act in good faith when setting its break policy simply because Progressive refused to waive its attorney-client privilege. It claims that the District Court's decision punishes Progressive for seeking legal advice that was not essential to a good-faith determination, as employers are not required to seek legal advice to demonstrate good faith. Thus, according to Progressive, the District Court's decision will discourage open and confident relationships between clients and attorneys. That may be so, but we, like Judge Restrepo, are incredulous that an employer in this situation would decline to share the legal advice it received when the issue of good faith is raised, and we will not preclude a court from considering this in its thought process.

Further, the District Court's unwillingness to find good faith was not based solely upon Satell's refusal to waive the attorney-client privilege. Rather, it was the logical result of the Court's analysis of the entire record. Even if we ignore the fact that Progressive sought legal advice and refused to disclose the substance of that advice, we would still find that Satell did not have reasonable grounds for believing that he was comporting with the FLSA. Merely reviewing case law and looking at the DOL website does not establish that he acted reasonably because, as we have explained, that case law and website would have informed him of the bright line rule in section 785.18. The DOL has explicitly and repeatedly stated that employees must be paid for breaks of twenty minutes or less. Selective interpretation of its rulings may establish wishful thinking or obstinacy, but it certainly does

_____

[83] *Am. Future Sys., Inc.*, 2015 WL 8973055, at *13.

24

not establish that the District Court abused its discretion in declining to find good faith and awarding liquidated damages.

## IV. CONCLUSION

For the foregoing reasons, we affirm the District Court's order granting in part the Secretary's partial motion for summary judgment with respect to FLSA minimum wage liability and liquidated damages.